UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **MARY E. HAYNES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-91 |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM & ORDER**

Pending before the Court is Plaintiff Mary E. Haynes' ("Haynes") Motion for Summary Judgment (Dkt. #5) and Defendant, Jo Anne B. Barnhart, the Commissioner of the Social Security Administration's ("Commissioner") Motion for Summary Judgment (Dkt. #6). After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that Haynes' motion should be DENIED and the Commissioner's motion should be GRANTED.

**Factual and Procedural Background**

Haynes filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Haynes' application for Disability Insurance Benefits. Haynes was born on February 26, 1947. At the time of her hearing before the Administrative Law Judge ("ALJ"), Haynes was 56 years of age with a high school education and two years of college course work. Haynes had been employed as a sales representative, business owner and secretary prior to the onset of her alleged disability.[1]

---

[1] Administrative Transcript ("Tr."), p. 26.

Haynes filed her application for Disability Insurance Benefits on May 6, 2002, alleging that she had been unable to work since April 19, 1993.[2] The claim was denied initially and on reconsideration, and a request for hearing was timely filed. Haynes appeared and testified before the ALJ on October 23, 2003. Dr. Richard A. Sawyers ("ME") appeared and testified in the capacity of an impartial medical expert. Dr. Don Marth, Ph.D., ("VE") appeared and testified in the capacity of an impartial vocational expert.

On February 18, 2004 the ALJ issued a decision denying entitlement to the benefits sought on the grounds that Haynes retained residual functional capacity ("RFC") to perform past relevant work in which she engaged before the onset of her disability. Haynes timely requested review by the Appeals Council. With her appeal, Haynes submitted additional medical evidence. On July 6, 2005 the Appeals Council denied Haynes' request for review on the grounds that there was no reason to conclude that the ALJ abused his discretion, there was an error of law, the decision was not supported by substantial evidence, there is a broad policy or procedural issue that might affect the public interest, or there is new material evidence that is contrary to the weight of evidence previously of record.[3] In its decision, the Appeals Council acknowledged that it considered Haynes' additional evidence.

## Standard of Review and Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276

---

[2] Tr., p. 23.

[3] Tr., p. 4.

F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n. 2 (5th Cir. 1999)).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that she was disabled on or before the last day of her insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the

Commissioner should evaluate disability claims according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;
>
> (2) a claimant will not be found to be disabled unless he has a "severe impairment;"
>
> (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;
>
> (4) a claimant who is capable of performing work he has done in the past must be found "not disabled;" and
>
> (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that she suffers from a mental or physical impairment that not only renders her unable to perform her previous work, but, given her age, education, and work experience, prevents her from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that she can no longer perform her previous job, the burden then shifts to the Commissioner to show that

there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997. By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## Discussion

In the unfavorable decision, the ALJ determined that Haynes met the nondisability requirements set forth in § 216(i) of the Social Security Act through March 1999. The ALJ proceeded to follow the five step process outlined in the regulations. At the first step, the ALJ found that Haynes had not engaged in substantial gainful activity since April 15, 1993. At step two, the ALJ determined that Haynes had impairments (i.e., carpal tunnel syndrome and status post fracture of the ulna) that constitute severe impairments significantly limiting mental or physical ability to do basic work activities. At the third step, the ALJ determined Haynes' severe impairments do not meet or medically equal one of the listed impairments in C.F.R. Pt. 404, Subpart P, Regulation No. 4. At step four, the ALJ determined that Haynes' past relevant work is "within the purview of her current residual functional capacity."[4]

Haynes objects to the ALJ's findings on the grounds that (1) the ALJ failed to accord appropriate evidentiary weight to the opinions of Haynes' treating physicians; (2) the ALJ posed an inadequate and incomplete hypothetical question to the vocational expert; and (3) the ALJ

---

[4] Tr., p. 26.

failed to make a sufficient legal and factual credibility analysis regarding Haynes' allegations of disability. Defendant maintains that the ALJ's decision is supported by substantial evidence and comports with relevant legal standards. The Court will address the objections separately.

*A.     Failure to Accord Appropriate Evidentiary Weight to the Opinions of Haynes' Treating Physicians.*

Haynes contends that the ALJ did not adequately consider the opinions of treating physicians including Dr. Saldana, Dr. Mason, and Dr. Jones. A treating physician's opinion regarding the nature and severity of a patients condition is normally given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). The ALJ may give less weight to the medical opinion of a treating physician when good cause is shown. *Greenspan*, 38 F.3d at 236. Good cause is established when a treating physician's statements are conclusory, unsupported, or otherwise incredible. *Id.* Even though the treating physician's medical opinion diagnosis should be afforded considerable weight, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

Upon examination of the ALJ's decision, it is clear that the ALJ considered the opinions of Dr. Saldana, Dr. Jones, and the other doctors of record. Dr. Saldana is mentioned several times in the ALJ's summary of the evidence. The administrative decision references Dr. Saldana's letter of May 26, 1995 and several of his referrals.[5] Furthermore, during the testimony of the ME before the ALJ, Dr. Saldana's attending physician statement was specifically brought

---

[5] Tr., pp. 23-24.

to the attention of the ALJ and the ME.[6]  The ALJ's decision also describes Dr. Jones' evaluation of March 18, 1996 in detail.[7]  Furthermore, the ALJ's decision explains that Dr. Jones' opinions were carefully considered, but were not accorded controlling weight because they were unsupported by objective medical evidence and inconsistent with other substantial evidence.[8] These observations demonstrate that the ALJ paid careful attention to Haynes' treating physicians' opinions.

Unlike the opinions of Drs. Saldana and Jones, the opinion of Dr. Mason was not present before the ALJ.  Dr. Mason's opinion was first introduced into the record before the Appeals Council.[9]  Haynes does not contend that the Appeals Council committed any error.  Since the opinion of Dr. Mason was not before the ALJ, the ALJ did not err by not considering it.[10]

The Court observes that the record contains a single attending physician statement signed by Dr. Saldana.[11]  The statement is styled as a standardized form.[12]  It indicates a single diagnosis: thoracic outlet syndrome.[13]  Without any explanation, the form indicates Haynes

---

[6] Tr., pp. 356-58.

[7] Tr., p. 24.

[8] Tr., pp. 24-25.

[9] Tr., p. 3; Tr., pp. 274-75.

[10] Dr. Mason's report contains a sole diagnosis of thoracic outlet syndrome.  This is inconsistent with substantial evidence as described *infra*.  Furthermore, Dr. Mason's statement indicates that no new testing was performed at the time.  There is no other objective medical evidence referenced as a basis for the opinion.

[11] Tr., pp. 160-61.

[12] Tr., pp. 160-61.

[13] Tr., p. 160.

impairments limit her to "no work."[14] Several functional restrictions are indicated, also without explanation.[15] The statement explicitly states that "no new tests" were conducted in conjunction with the evaluation.[16] Dr. Saldana's notes preceding the date of the attending physician statement are largely illegible and do not reference any sufficient objective medical evidence supporting his statement.[17] The record contains limited evidence of testing performed five years prior to Dr. Saldana's statement, which merely indicates a possibility of thoracic outlet syndrome.[18]

The record also contains two relevant attending physician statements signed by Dr. Jones.[19] Dr. Jones' statements diagnose Haynes with carpal tunnel syndrome, cubital tunnel syndrome, and thoracic outlet syndrome.[20] Like Dr. Saldana's statement, Dr. Jones' statements are standardized forms.[21] On both statements, Dr. Jones merely selected options indicating the most severe functional restrictions without providing any explanations.[22] On Dr. Jones statement of May 7, 1998, a portion of the form where "pertinent diagnostic or evaluative studies" should

---

[14] Tr., p. 161.

[15] Tr., p. 161.

[16] Tr., pp. 160-61.

[17] Tr., pp. 145-59.

[18] Tr., pp. 285-95.

[19] Tr., pp. 236-37; Tr., pp. 242-43.

[20] Tr., p. 236; Tr., p. 242.

[21] Tr., pp. 236-37; Tr., 242-43.

[22] Tr., p. 237; Tr., p. 243.

8

be indicated is left blank.[23]  The same field on Dr. Jones' November 15, 1996 form indicates "see attached notes."[24]  While none of Dr. Jones' notes are dated of November 15, 1996, several office visitation notes of prior dates are in the record.  Numerous observations recorded in these notes are inconsistent with Dr. Jones' diagnoses of Haynes.  Dr. Jones' notes July 19, 1996 read: "A [r]eview of the EMG and nerve conduction studies done today reveals bilateral median nerve entrapment, with especially 1+ FIBS in the left abductor muscle consistent with carpal tunnel syndrome and not consistent with any other cervical radiculopathy, thoracic outlet syndrome or brachial plexopathy."[25]  Dr. Jones' notes of April 19, 1996 read: "Range of motion in the shoulders is full without any evidence of impingement and muscle strength is 5/5 in all grips.  Her upper extremity reflexes are 2+ and symmetrical as previously noted.  Testing for thoracic outlet included hyperabduction maneuver in which I cannot appreciate a loss in the radial pulse on either side.  By palpitation as well I do not appreciate a change in the subclavian signal on doppler examination with either hyperabduction or shoulder extension"[26]  Dr. Jones notes of March 3, 1996 read: "Although Roos' testing does reproduce her symptoms in both upper extremities, there is no evidence of a loss of pulse on today's examination.  Although this does not rule out any evidence of thoracic outlet syndrome, it does demonstrate that there is at least no vascular impingement."[27]

---

[23] Tr., p. 236.

[24] Tr., p. 242.

[25] Tr., p. 245.

[26] Tr., p. 246.

[27] Tr., p. 250.

9

Other substantial evidence of record is inconsistent with the opinions of Drs. Jones and Saldana. Dr. David Willhoite, after performing several tests, determined that Haynes did not suffer from thoracic outlet syndrome, but instead diagnosed cubital tunnel syndrome.[28] Dr. Willhoite found a 7% impairment of the whole person regarding Haynes.[29] Dr. Willhoite's notes indicate that in 1995 Dr. Hirsch conducted an EMG which showed mild bilateral carpal tunnel syndrome with no other findings.[30] Dr. Fred Olin's notes of January 9, 1996 read: "Mrs. Haynes said that her arm feels OK."[31] The notes further indicate: "Today [Haynes] has a full range of motion of her elbow and wrist in all planes."[32] Dr. Olin's notes of September 26, 1996 read: "Mrs. Haynes is tolerating her cast and she said that except for a little occasional twinge on the ulnar side of her forearm, she has no discomfort. She is using her hand and has no problems there."[33] Dr. Paul Pace, in his letter of July 5, 1995, wrote, "EMGs point toward mild associated carpal tunnel syndrome."[34] A functional capacity evaluation performed on Haynes in September 21, 1999, indicates that she might be able to work if she was permitted to sit primarily.[35]

The record evidence described above demonstrates that the opinions of Drs. Saldana and Jones are not well supported by medically acceptable clinical and laboratory diagnostic

---

[28] Tr., pp. 162-63.

[29] Tr., p. 163.

[30] Tr., p. 163.

[31] Tr., p. 166.

[32] Tr., p. 166.

[33] Tr., p. 170.

[34] Tr., p. 186.

[35] Tr., pp. 227-33.

techniques and are inconsistent with other substantial evidence.  The record evidence does not indicate which tests, if any, Dr. Saldana used to formulate his conclusions recorded in his attending physician statement.  Furthermore, his findings are inconsistent with other substantial evidence including, but not limited to: (1) Dr. Willhoite's finding that Haynes does not suffer from thoracic outlet syndrome; (2) Dr. Pace's finding of only mild carpal tunnel syndrome; and (3) Haynes' functional capacity assessment finding that she could possibly perform work.  Dr. Jones opinion is inconsistent with substantial evidence of record for these same reasons.  Furthermore, the internal inconsistencies presented in Dr. Jones' notes establish good cause to not accord her opinions controlling weight.  The Court finds that substantial evidence supports the ALJ's findings.  Therefore, the ALJ did not err in choosing to not accord controlling weight to the opinions of Drs. Saldana and Jones.

*B.     The ALJ Posed an Inadequate and Incomplete Hypothetical Question to the Vocational Expert*

Haynes argues that the hypothetical question presented by the ALJ to the VE cannot adequately be reviewed by this Court because a form used in creating and interpreting the hypothetical was not made part of the record.  The Fifth Circuit has explained:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling*, 36 F.3d at 436.

It is uncontested that the ALJ provided the ME and the VE with a form that they interpreted during their testimony. The form was used to help qualify Haynes' medical conditions. The ME consulted the form while qualifying Haynes' physical limitations into categories such as "very low," "low," "medium," "high" and "very high."[36] The ALJ then posed the following hypothetical to the VE, using the ME's qualifications:

> If we had an individual who was limited to lifting a maximum of 20 pounds occasionally and 10 pounds on a frequent basis and there would be no standing and walking or sitting limitations, and I go back to that 10 pounds and 20 pounds again with you, but there are some definitions on hand and arm usage on the front of that -- the bottom of that page there, and what we're looking at is, then, in lifting and carrying, using those definitions that are on this document, this person could lift and carry at a medium rate or -- which means body is in steady motion at a comfortable pace and no difficulty in maintaining pace, 10 pounds or less and on a -- and from 11 to 25 pounds would be -- meaning that frequent -- but again, no difficulty maintaining pace. All right. Then we get to the repetitive use of the hands, she would be at medium on the right hand and low on the left hand and simple grasping would be very high on the right and medium on the left. And then for fine finger dexterity, it would be medium on the right and low on the left. And using those pace and those definitions, could work at a seven to eight-hour pace.[37]

After being presented with the hypothetical above, the VE referenced the form, interpreted the qualifications and determined that Haynes was capable of doing work she was previously enabled to perform.[38]

An examination of the administrative hearing transcript and the relevant record evidence reveals that the ALJ did not commit reversible error by not including the form in the record. It is undisputed that Haynes' representative, the ALJ, the ME, and the VE all had copies of the same

---

[36] Tr., pp. 348-51

[37] Tr., p. 360.

[38] Tr., pp. 360-61.

form during the course of the hearing. Therefore, each individual could readily reference the form and identify the precise language used to qualify Haynes' disabilities.

The Court finds it significant that Haynes' representative did not object to the use of the form at any time. Upon cross examination cross examination of the VE, Haynes' representative did discuss categories including "very high" and "very low" with the VE and ALJ.[39] At no time, however, did Haynes' representative object to the form's use. Nonetheless, the categories of "very high" and "very low" were never relied upon by the ME, and therefore have no impact on the VE's opinion. The ALJ, as described below, verbally described these categories before the ME and VE.[40] The Court also finds it noteworthy that Haynes' representative had access to the form, and yet never made any effort to make it part of the record. Haynes' representative's actions demonstrate an implicit acceptance of the ALJ's form and its use at the hearing.

While the form itself is not present in the record, the ALJ described certain definitions on the form during the hearing. Upon direct examination of the ME, the ALJ stated:

> [V]ery low means hands are idle most of the time. Low means frequent pauses away from gripping, and medium means body is in steady motion with pace comfortable and low difficulty maintaining pace. High means hands are -- and body are in rapid, steady motion. Very high, body parts are in faster motion difficulty.[41]

The ME and ALJ continued to discuss certain additional portions of the form, describing each of the terms they interpreted.[42] During the exchanges between the ME and ALJ, The VE was

---

[39] Tr., pp. 362-64.

[40] Tr., pp. 362-64.

[41] Tr., p. 348.

[42] Tr., p. 350.

present.[43]  When Haynes' representative cross examined the VE, discussing the categories of "very high" and "very low," the ALJ further described the meaning of the terms.[44]       The ALJ's description of the terms was consistent with the descriptions he presented to the ME.

Considering the circumstances surrounding the use of the ALJ's form at Haynes' hearing, the Court finds that the hypothetical question posed to the VE reasonably incorporated all disabilities recognized by the ALJ.  Despite the form not being in the record, it is clear that Haynes attorney, the ME, and the VE all had access to the same form and therefore interpreted the same definitions.  The ALJ's description of the terms used in the form demonstrate that the definitions presented were not unduly vague or confusing.  Furthermore, the ALJ's consistent explanation of the definitions to the ME and VE insured a consistent understanding among the testifying parties.   The Court finds it compelling that Haynes' representative did not object to the use of the form and did not enter it into the record.  Such decisions by competent counsel demonstrate a ratification of the proceedings.  Therefore, the Court finds that the ALJ did not commit reversible error by failing to include the form in the record.

Haynes further argues that the ME's assessment of Haynes did not incorporate all of her disabilities because the ME failed to incorporate Haynes' knee arthritis.  This argument is without merit.

Haynes relies on an assessment by Frank Wilson, D.O., to support her claims.[45]  However, these records were never before the ALJ or the ME at the time of the administrative hearing.

---

[43] Tr., p. 359.

[44] Tr., pp. 362-64.

[45] (Dkt. # 5 at 23).

They were first made part of the record before the Appeals Council.[46]  Since Haynes has not raised any issues as to the proceedings before the Appeals Council, and since the medical evidence was not before the ALJ or ME, such medical evidence will not be considered in determining if the ALJ erred.

The Court observes that limited evidence of knee arthritis was presented at the administrative hearing, but such evidence did not require incorporation of further limitations into the ME's assessment.  Haynes' testified that through her date last insured, over a course of five or six years, she did not have any treatment for her alleged knee problems.[47]  When the ME considered the medical evidence before him, he recognized that the only evidence indicating knee problems consisted of Haynes' hearing testimony and a doctor's report dated in 2001, two years after the date last insured.[48]  The doctor's report indicated that Haynes' knee problems became severe only after 1999.[49]  The ME, upon examination of the doctor's report, determined that Haynes did not have any standing and walking limitations through 1999.[50]  Therefore, the Court finds that the ME's finding of no standing or walking limitations is supported by substantial evidence.

C.       *The ALJ Failed to Make a Sufficient Legal and Factual Credibility Analysis Regarding Plaintiff's Allegations of Disability*

---

[46] Tr., p. 3; Tr., pp. 297-99.

[47] Tr., p. 338.

[48] Tr., p. 347.

[49] Tr., p. 347.

[50] Tr., pp. 347-48.

Haynes argues that the ALJ improperly discredited Haynes' testimony. The law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981)). When a plaintiff alleges disability resulting from pain, she must establish a medically determinable impairment that is capable of producing disabling pain. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Once a medical impairment is established, the subjective complaints of pain made by a claimant must be considered along with the medical evidence in determining the claimant's work capacity. *See id.* The ALJ is entitled to make credibility findings regarding a claimant's testimony. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The ALJ's credibility findings are entitled to great deference. *Id.* Specific reasons for the weight given to a claimant's credibility must be provided by the ALJ. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p. An ALJ may discount subjective complaints of pain if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128).

In finding that Haynes' testimony was not credible, the ALJ discussed several factors. The ALJ noted that Dr. Pace diagnosed Haynes' carpal tunnel syndrome as "mild to moderate."[51] The ALJ also noted that Haynes was diagnosed, at one point, to have a wide range of motion in her elbows and wrists.[52] The ALJ further noted an absence of routine medical treatment and hospital visits.[53] The Court finds that reasonable mind may accept evidence of a mild to moderate ailment as adequate to support a conclusion of a lack of high levels of pain. Also, frequency of

---

[51] Tr., p. 26

[52] Tr., p. 26.

[53] Tr., p. 26.

medical treatment may be considered by an ALJ in making a credibility finding.  Social Security Ruling 96-7p.

Furthermore, Haynes own testimony of record is not entirely consistent with her claims of debilitating pain.  Haynes testified that before 1999 she did not have difficulty picking up certain items.[54]  Haynes further testified that she continues to perform household chores, albeit with some difficulty.[55]  Notably, Haynes testified that at one point "financial" reasons kept her from performing work rather than her ailments.[56]  Therefore, the Court finds that the ALJ's determination of Haynes' credibility is supported by substantial evidence.

## Conclusion

For the foregoing reasons, Haynes' Motion for Summary Judgment (Dkt. #5) is **DENIED** and the Commissioner's  Motion for Summary Judgment (Dkt. #6) is **GRANTED**.  The Court shall enter a final judgment on even date herewith.

It is so ORDERED.

Signed this 29th day of September, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

[54] Tr., p. 340.

[55] Tr., p. 336.

[56] Tr., p. 335.